IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   Criminal No.  CCB-13-0407 |
| | * |
| MICHAEL ROBERTS | * |

**********

## MEMORANDUM

Michael Roberts is a federal prisoner who is serving a 120-month sentence following his guilty plea to a charge of conspiracy to distribute and possess with intent to distribute heroin. (ECF 222, Judgment). Now pending is Robert's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "compassionate release" statute), based on his particular vulnerability to COVID-19. (ECFs 312, 318). The government opposes the motion, (ECF 321), and Roberts has replied (ECFs 323, 324). For the reasons explained below, the motion will be denied.

## BACKGROUND

Beginning at least as early as December 2012, Roberts, along with eight others, conspired to distribute bulk quantities of heroin in Maryland obtained from sources in Philadelphia and New York. (ECF 168, Plea Agreement, at 4-6). Through a wiretap, the Cecil County Drug Enforcement Task Force and the Drug Enforcement Administration recorded Roberts and his co-conspirator, Rachine Garnett, discussing the acquisition and sale of heroin and attempting to avoid detection and arrest by law enforcement. (*Id.*). Roberts was on probation and parole during the commission of the offense. (ECF 202, PSR, ¶ 43). He pled guilty on June 24, 2014. (ECF 164)

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See*

1

18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id*. But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days has lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id*. The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

Roberts requests compassionate release on the basis that his underlying health conditions place him at greater risk of serious illness related to COVID-19. Roberts has exhausted his administrative remedies and his motion is properly before the court. (ECF 303-1, Warden's Letter). The only issues are (1) whether there are "extraordinary and compelling reasons" that would support reduction of Roberts's sentence, and (2), if there are such reasons, whether the § 3553(a) factors weigh in favor of a sentence reduction.

## DISCUSSION

Under 28 U.S.C. § 994(t), the United States Sentencing Commission is responsible for defining "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). According to the Commission's Policy Statement, "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated

and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP. *See* U.S.S.G. §1B1.13 cmt. n.1(A)–(D). The BOP criteria for "other reasons" justifying a sentence reduction are set forth in Program Statement 5050.50 ("Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)"). As the Fourth Circuit has held, however, the court possesses independent discretion—guided, but not bound by, Sentencing Commission and BOP criteria—to determine whether there are "extraordinary and compelling reasons" to reduce a sentence. *See United States v. McCoy*, 981 F.3d 271, 288 (4th Cir. 2020).[1]

Roberts argues that his risk of developing serious illness related to COVID-19 due to his underlying medical conditions (obesity; a compromised immune system due, in part, to the loss of his spleen; and a history of smoking and drug use) constitutes an "extraordinary and compelling" reason to reduce his sentence.[2] (ECF 319 at 2, ECF 321-2, Medical Doc., at 23, 57-59). The Centers for Disease Control ("CDC") has issued guidance on underlying conditions that increase an individual's risk of severe illness related to COVID-19. *See Underlying Medical Conditions Associated with High Risk for Severe COVID-19: Information for Healthcare Providers*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated Oct. 14, 2021). The CDC distinguishes between those conditions that are "supported by meta-analysis/systematic review" (e.g., cancer), those "supported by mostly observational. . . studies" (e.g., Down syndrome), and those supported only by "mixed evidence" (e.g., asthma). *Id.*

---

[1] The court's independent discretion stems from the First Step Act of 2018, which, *inter alia*, amended 18 U.S.C. 3582(c) with the stated goal of "increasing the use and transparency of compassionate release." *See* First Step Act § 603(b), Pub. L. No. 115-391, 132 Stat. 5194; *see also McCoy*, 981 F.3d at 277-78 (explaining Policy Statement § 1B1.13's partial inconsistency with the First Step Act amendments to § 3582(c)).

[2] It bears noting that Roberts contracted COVID-19 in December 2020. (ECF 321-2 at 12-13). Roberts references his diagnosis but does not comment on its severity. (*See* ECF 312 at 3).

Obesity and smoking (both current and former) are in this first group, while substance use disorder and general immune deficiency are supported only by mixed evidence or observational studies.

The government concedes that Roberts's conditions, taken together, may pose an increased risk of contracting severe illness related to COVID-19.[3] Nonetheless, the government argues that Roberts's conditions do not constitute "extraordinary and compelling reasons" for compassionate release, considering that he already has recovered from COVID-19 and that he refused the Moderna vaccine when it was offered by the Bureau of Prisons. (ECF 321-3, Record of Vaccine Refusal). Being vaccinated, of course, does not guarantee immunity. The court agrees, however, that a refusal to be vaccinated, in the absence of a documented medical reason, undercuts a claim of extraordinary and compelling reasons for compassionate release.[4]

Even if the court found "extraordinary and compelling reasons" for Roberts's early release, the compassionate release statute provides that, before reducing a defendant's sentence, the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." *See* 18 U.S.C. § 3582(c)(1)(A). Here, the § 3553(a) factors weigh against granting relief based on Roberts's history and characteristics and the significance of his criminal conduct. *See* § 3553(a)(1), (2)(B-C). Roberts was convicted of a serious felony involving a substantial amount of heroin, and

---

[3] The government offers Roberts's medical records to dispute the veracity of his claims, noting that the records do not mention his history of smoking, list Roberts's weight as approximately fifteen pounds less than he claims (making him overweight, not obese), contain no documentation of abuse of illicit substances while incarcerated (thus making him a former user, which is not covered by the CDC's list of underlying conditions), and make no mention of any permanent immuno-compromised state resulting from his splenectomy in 2000. (*See* ECF 321-2).

[4] The court acknowledges that the vaccine was initially offered to Roberts within three months of his diagnosis with COVID-19, before medical professionals recommend infected individuals receive vaccination. (*See* ECF 323 at 2). While Roberts alleges that he has not been offered the vaccine again (*Id.*), there is also no evidence in the record that he requested to be vaccinated at a later date.

4

this was not the first time Roberts engaged in conduct dangerous to the community. (*See* ECF 202, PSR, ¶¶ 35-45 (describing Roberts's criminal history including two prior felony convictions involving controlled substances)). Moreover, Roberts has a recent disciplinary record in the Bureau of Prisons. (*See* ECF 324-1, Disciplinary Record (describing a 2018 infraction for possession of a cell phone)). As noted in Roberts's pre-sentence report, his two prior convictions involving possession of controlled substances with intent to distribute, for one of which he was on probation and for the other on parole, qualified Roberts as a career offender. (*Id.*). Accordingly, while the court is sympathetic to Roberts's concerns about COVID-19, he is not an appropriate candidate for compassionate release.[5]

## CONCLUSION

For the reasons explained above, Roberts's motion for compassionate release will be denied. The associated motions to seal will be granted to protect the confidentiality of personal medical information. A separate order follows.

12/1/21
Date

_CCB_
Catherine C. Blake
United States District Judge

---

[5] Roberts is eligible for home confinement at the end of December and for full release in June 2022, which also alleviates the immediacy of any health risk.